**SHAKED LAW GROUP, P.C.**
Dan Shaked (DS-3331)
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
ShakedLawGroup@gmail.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
MARY CONNER,

                              Plaintiff,            Case No. 20-cv-4947

            - against -

                                           **COMPLAINT**

KIDIZEN, INC.,

                              Defendants.
---------------------------------------------------------X

## INTRODUCTION

1. Plaintiff, Mary Conner ("Plaintiff" or "Conner"), brings this action on behalf of herself against Kidizen, Inc. (hereinafter "Kidizen" or "Defendant"), and states as follows:

2. Plaintiff is a visually-impaired and legally blind person who requires assistive technology to read websites and mobile application content using her computer, phone, and other mobile devices. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to

1

the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4. Plaintiff uses the Internet to help her navigate a world of goods, products and services like the sighted.  The Internet, websites and mobile applications provide her with a window into a world that she would not otherwise have.  Plaintiff brings this civil rights action against Kidizen for their failure to design, construct, maintain, and operate a mobile application (software that is intended to run on mobile devises such as phones or table computers) that is not fully accessible to and independently usable by Plaintiff and other blind or visually-impaired persons.  The mobile application at issue is called "Kidizen" (the "App") and is available through the Apple "app store" for download and installation on Apple devices.  Defendant developed the App and made it available to millions of phone and tablet users in the Apple app store.  The U.S. Supreme Court recently observed that apps allow users to "send messages, take photos, watch videos, buy clothes, order food, arrange transportation, purchase concert tickets, donate to charities, and the list goes on.  'There's an app for that' has become part of the 21st-century American lexicon."  *Apple, Inc. v. Robert Pepper*, 139 S.Ct. 1514, 203 L.Ed.2d 802 (May 13, 2019).

5. Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their websites and apps are in compliance with the ADA.

6. The App provides to the public a wide array of the goods, services, and other programs offered by Kidizen.  Yet, Defendant's App contains thousands of access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the App.  In fact, the access barriers make it impossible for blind and visually-impaired users to even complete

2

a transaction on the App.  Thus, Kidizen excludes the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living.  In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind and visually-impaired persons to fully and independently access a variety of services.

7. The blind have an even greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility.  This fact is even more prominent today in light of the Covid-19 pandemic.  The lack of an accessible App means that blind people are excluded from experiencing transacting with defendant's App and from purchasing goods or services from defendant's App.

8. Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail Apps, which make use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendant has chosen to rely on an exclusively visual interface.  Defendant's sighted customers can independently browse, select, and buy on the App without the assistance of others.  However, blind persons must rely on sighted companions to assist them in accessing and purchasing on the App.

9. By failing to make the App accessible to blind persons, Defendant is violating basic equal access requirements under both state and federal law.

10. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA.  Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites, Apps, and other public accommodations that are inaccessible to blind and visually impaired persons.  Similarly, New York state law

3

requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

11. Defendant offers its App to the general public from which it provides a marketplace e-commerce platform where visitors can browse, shop and sell kids' clothing, shoes, accessories, toys, books, décor, and much more. Defendant's App allows mobile device users to make purchases and sales on a mobile platform through a connection to Wi-Fi or cellular data so that users can explore affordable products and securely purchase from a large selection of products. Defendant encourages customers to download the App to "shop the brands you love," "sell in a snap," "discovery the latest styles," and "share your kid looks," as well as save money and empty your closets, amongst other features of the App delivered to customers' phones. As such, it has subjected itself to the ADA because Defendant's App is offered as a tool to promote, advertise, and sell its products from a place of public accommodation.

12. Plaintiff is the grandmother of an 18-month old boy named Jonathan who lives with her and her daughter. Plaintiff browsed and intended to make a purchase of Gap brand clothing and toys on Defendant's App. However, unless Defendant remedies the numerous access barriers on its App, Plaintiff will continue to be unable to independently navigate, browse, use, and complete a transaction on the App. Defendant is denying blind and visually-impaired persons throughout the United States with equal access to the goods and services Kidizen provides to their non-disabled customers through its App. Defendant's denial of full and equal access to its App, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

13. Because Defendant's App, is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change

in Kidizen's policies, practices, and procedures so that Defendant's App will become and remain accessible to blind and visually-impaired consumers.  This complaint also seeks compensatory damages to compensate Plaintiff for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 *et seq*., and 28 U.S.C. § 1332 because Plaintiff is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.  See 28 U.S.C. § 1332(d)(2).

15. This Court also has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 *et seq*.) and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 *et seq*. ("City Law").

16. Venue is proper in this District of New York pursuant to 28 U.S.C. §§ 1391(b)-(c) and 144(a) because Plaintiff resides in this District, Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

17. Defendant is registered to do business in New York State and has been conducting business in New York State, including in this District.  Defendant purposefully targets and otherwise solicits business from New York State residents through its App.  Because of this targeting, it is not unusual for Kidizen to conduct business with New York State residents. Defendant also has been and is committing the acts alleged herein in this District and has been and is violating the rights of consumers in this District and has been and is causing injury to consumers in this District.  All of the acts and omissions giving rise to Plaintiff's claims have occurred in this

District.  Most courts support the placement of venue in the district in which Plaintiff tried and failed to access the website or App.  In *Access Now, Inc. v. Otter Products, LLC* 280 F.Supp.3d 287 (D. Mass. 2017), Judge Patti B. Saris ruled that "although the website may have been created and operated outside of the district, the attempts to access the website in Massachusetts are part of the sequence of events underlying the claim.  Therefore, venue is proper in [the District of Massachusetts]." *Otter Prods*., 280 F.Supp.3d at 294.  This satisfies Due Process because the harm – the barred access to the website – occurred here."  *Otter Prods*., 280 F.Supp.3d at 293. Additionally, in *Access Now, Inc. v. Sportswear, Inc*., No. 17-cv-11211-NMG, 2018 Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018), Judge Nathaniel M. Gorton stated that the defendant "availed itself of the forum state's economic activities by targeting the residents of the Commonwealth . . . .  Such targeting evinces a voluntary attempt to appeal to the customer base in the forum." *Sportswear*, No. 1:17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 at *11.  Thus, establishing a customer base in a particular district is sufficient cause for venue placement.

## PARTIES

18. Plaintiff, is and has been at all relevant times a resident of Queens County, State of New York.

19. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., the New York State Human Rights Law and the New York City Human Rights Law. Plaintiff is the owner of an iPhone 11 mobile devise.  Plaintiff cannot use a computer, iPhone, or other mobile devise without the use of assistive technology.  Plaintiff, Mary Conner, has been denied the full enjoyment of the facilities, goods and services of Defendant's App as a result of accessibility barriers on the App.

20. Defendant, Kidizen, Inc., is Delaware Foreign Business Corporation doing business in New York with its principal place of business located at 1330 Lagoon Avenue, Minneapolis, MN 55408.

21. Upon information and belief, Kidizen has raised over $5,000,000 from venture capital firms.  Upon information and belief, not a single dollar of the over $5,000,000 raised has been used to make its App accessible to the visually-impaired.

22. Kidizen provides to the public an App which provides consumers with access to an array of goods and services, including, the ability to browse and view the marketplace of kids' clothing, shoes, accessories, toys, books, décor, and much more offered for sale, make purchases, and sell kids' products to others, among other features.  Consumers across the United States use Defendant's App to purchase and sell kids' clothing, shoes, accessories, toys, books, décor, and other related products.  Defendant's App is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).  *See Victor Andrews v. Blick Art Materials, LLC*, No. 17-cv-767, 2017 WL 3278898 (E.D.N.Y. August 1, 2017).

## NATURE OF THE CASE

23. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

24. Blind and visually-impaired consumers must use the assistive technology on the iPhone to access app content.  The app must be designed and programmed to work with the assistive technology available on the iPhone.  Defendant's App, however, contains digital barriers which limit the ability of blind and visually impaired consumers to access it, even with Apple's assistive technology.

25. Defendant's App does not properly interact with Apple's assistive technology in a manner that will allow the blind and visually-impaired to enjoy the App, nor does it provide other means to accommodate the blind and visually-impaired.

26. Plaintiff has also downloaded and attempted to patronize Defendant's App in the past and intends to continue to make further attempts to patronize Defendant's App, most recently on October 12, 2020. She would like to be able to learn about Defendant's kids' products, learn about the brands sold, explore reviews as well as be able to learn about and take advantage of any specials or discounts offered by Defendant. Specifically, Plaintiff was interested in purchasing Gap brand clothing and toys for her grandson. However, unless Defendant is required to eliminate the access barriers at issue and is required to change its policies so that access barriers do not reoccur on Defendant's App, Plaintiff will continue to be denied full and equal access to the App as described and will be deterred from fully using Defendant's App or making purchases.

27. Plaintiff continues to attempt to utilize the App and/or plans to continue to attempt to utilize the App in the near future. In the alternative, Plaintiff intends to monitor the App in the near future as a tester to ascertain whether it has been updated to interact property with the assistive technology.

28. Plaintiff is continuously aware of the violations at Defendant's App and is aware that it would be a futile gesture to attempt to utilize the App as long as those violations exist unless she is willing to suffer additional discrimination.

29. Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's App. By continuing to operate its App with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, and/or accommodations available to the general public. By encountering the

discriminatory conditions at Defendant's App, and knowing that it would be a futile gesture to utilize the App unless she is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the general public and is deterred and discouraged from doing so.  By maintaining an app with violations, Defendant deprives Plaintiff the equality of opportunity offered to the general public.

30. Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of Defendant's discrimination until the Defendant is compelled to comply with the requirements of the ADA.

31. Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the App as described above.  Plaintiff has reasonable grounds to believe that she will continue to be subjected to discrimination in violation of the ADA by the Defendant.  Plaintiff desires to access the App to avail herself of the benefits, advantages, goods and services therein, and/or to assure herself that this App is in compliance with the ADA so that she and other similarly situated will have full and equal enjoyment of the App without fear of discrimination.

32. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 are well-established guidelines for making websites and apps accessible to blind and visually-impaired persons.  These guidelines are universally followed by most large business entities and government agencies to ensure their websites and apps are accessible.  Many Courts have also established WCAG 2.1 as the standard guideline for accessibility.  The federal government has also promulgated website and app accessibility standards under Section 508 of the Rehabilitation Act.  These guidelines are readily available via the Internet, so that a business designing a website or app can easily access them.

These guidelines recommend several basic components for making websites and apps accessible. Additionally, the World Wide Web Consortium's Web Accessibility Initiative ("WAI") has found that the majority of success criteria from WCAG 2.0 could apply to non-web software [i.e. apps] with no or only minimal changes. *See* http://www.w3.org/WAI/GL/2013/WD-wcag2ict-20130905/accordion. More recently, in 2015, the WAI released a document called "Mobile Accessibility: How WCAG 2.0 and Other W3C/WAI Guidelines Apply to Mobile," which observed that most of the advise in the document also applies to mobile apps. *See* http://www.w3.org/TR/mobile-accessibility-mapping/. The 2018 upgrade to WCAG 2.1 provides additional success criteria, many of which concern mobile accessibility. *See* http://www.w3.org/2017/01/ag-charter. Without these very basic components, an app will be inaccessible to a blind person using an iPhone. Apps need to be accessible to the "least sophisticated" mobile devise user and need to be continually updated and maintained to ensure that they remain fully accessible.

33. The ADA expressly contemplates the type of injunctive relief that Plaintiff seeks in this action. The ADA provides, in part:

> [i]n the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

34. Therefore, Plaintiff seeks a declaration that Defendant's App violates federal law as described and an injunction requiring Defendant to modify its App so that it is fully accessible to, and independently usable by, blind or visually-impaired individuals. Plaintiff further requests that the Court retain jurisdiction of this matter for a period to be determined to ensure that Defendant comes into compliance with the requirements of the ADA and to ensure that Defendant

has adopted and is following an institutional policy that will, in fact, cause Defendant's App to remain in compliance with the law.

## FACTUAL ALLEGATIONS

35. Defendant, Kidizen, Inc., controls and operates the App in New York State and throughout the United States.

36. The App offers products for online sale.  The online store allows the user to browse the thousands of kids' products available for sale, make purchases, sell goods, and perform a variety of other functions.

37. Among the features offered by the App are the following:

(a) Consumers may use the website to connect with Kidizen on social media, using such sites as Facebook, Twitter, Instagram, and Pinterest;

(b) an online store, allowing customers to browse, purchase and sell kids' clothing, shoes, accessories, toys, books, décor, and much more; and

(c) Learn about shipping and return policies, read product reviews, search for the latest styles, share looks on social media, and learn about the company.

38. This case arises out of Kidizen's policy and practice of denying the blind access to the goods and services offered by the App.  Due to Kidizen's failure and refusal to remove access barriers to the App, blind individuals have been and are being denied equal access to Defendant, as well as to the numerous goods, services and benefits offered to the public through the App.

39. Kidizen denies the blind access to goods, services and information made available through the App by preventing them from freely navigating the App.

40. Blind and visually-impaired individuals may access apps by using accessibility features in conjunction with screen-reader software that converts text to audio.  Screen-reader

software provides the primary method by which a visually-impaired person may independently use the Internet.  Unless the app is designed to be accessed with screen-reader software, visually-impaired individuals are unable to fully access apps and the information, products, and services available through apps.

41. Plaintiff is legally blind and uses VoiceOver screen-reader software in order to access app content.  VoiceOver is the most popular screen-reader software utilized worldwide by visually-impaired individuals for Apple tables and phones.  "VoiceOver is a gesture-based screen reader that lets you enjoy using iPhone even if you don't see the screen."  *See* Apple, *Accessibility*, available at https://apple.com/accessibility/iphone/vision/.

42. Despite Plaintiff's attempts, Defendant's App did not integrate with the VoiceOver software, nor was there any function within the App to permit access for visually-impaired individuals through other means.  Plaintiff's browsing and purchase attempts were rendered futile because the App was inaccessible.  Therefore, Plaintiff was denied the full use and enjoyment of the goods and services available on Defendant's App as a result of access barriers on the App. For example, VoiceOver users cannot make a purchase on this App.  Images are not announced, searches cannot be conducted, items cannot be added to the shopping cart, checkout cannot be accessed, etc.  Sighted users can search for clothing and toys, but such features do not work with VoiceOver software.

43. The App contains access barriers that prevent free and full use by Plaintiff and blind persons using the VoiceOver software.  These barriers are pervasive and include, but are not limited to: lack of alt-text on graphics, inaccessible drop-down menus, the lack of navigation links, the lack of adequate prompting and labeling, empty links that contain no text, redundant links, and the requirement that transactions be performed solely with a finger.

41. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on an App.  Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture.  Alt-text does not change the visual presentation.  There are many important pictures on the App that lack a text equivalent.  The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a blind computer user)  As a result, Plaintiff and blind App customers are unable to determine what is on the App, browse the App or investigate and/or make purchases.

44. The App also lacks prompting information and accommodations necessary to allow blind shoppers who use VoiceOver software to locate and accurately fill-out online forms. On a shopping App such as Wish, these forms include search fields to locate products and fields used to fill-out personal information, including address and credit card information.  Due to lack of adequate labeling, Plaintiff and blind customers cannot make purchases or inquiries as to Defendant's merchandise, nor can they enter their personal identification and financial information with confidence and security.

45. Defendant's App does not meet the WCAG 2.1 A level of accessibility. Plaintiff experienced the following issues when attempting to shop on the App:

(a) WCAG guideline 1.1.1 – <u>Non-Text Content</u> – Text alternatives for non-text content are provided.  In the case at hand, the three images at the top of the home screen – Monday's Hash Flash Sale; Shop All Brands; and Just in for kids – are not announced, yet each receives focus so a user must swipe through these but they will not hear anything.  This is a critical error.

(b) WCAG guideline 1.3.1 – <u>Info and Relationships</u> - information, structure, and relationships conveyed through presentation should be programmatically determined to be available in text. In the case at hand, the Popular Brands carousel on the Shop screen only announces the label.

Users do not hear any of the brands in the carousel such as Gap, etc.  Only the headline is announced, none of the content is announced.

(c) WCAG guideline 2.5.3 – <u>Label in Name</u> – Any component that has text or images of text must have an accessible name shown in visible text.  In the case at hand, the shopping cart image does ot receive focus and it is not announced.  Consequently, Plaintiff and other screen reader users are unable to add to cart or checkout.  This is a critical error.

(d) WCAG guideline 4.1.2 – <u>Name, Role, Value</u> – All elements need to be built for accessibility.  In the case at hand, the "Clothing" Size guide is not accessible.  In the case at hand, the Shop by Style selector is announced but none of the styles are selectable.  When VoiceOver is off, a sighted visitor to the App can swipe through all ten styles and select one to go directly to that page.  When VoiceOver is on, a blind user cannot swipe and none of the styles are announced.

46. Defendant's App also does not meet the WCAG 2.1 AA level of accessibility.

(a) WCAG guideline 1.4.5 – <u>Images of Text</u> – Website doesn't use images of text.  In the case at hand, screen reader users cannot hear some ad content.  The bottom of the Shop screen contains an ad titled "This week's Hash Flashes."  In the image are four different hashtags with dates, times and descriptions of the sales that will occur.  Screen reader users are unable to hear any of this information because it is embedded in the image and an alternative is not present.  The content in this image is not announced.  This is a critical error.

(b) WCAG guideline 4.1.3 – <u>Status Messages</u> – If a status message is presented and focus is not set to that message, then the message must be announced to screen reader users.  In the case at hand, when a sighted person attempts to add an item to the cart, then a pop-up window is shown which reads "please create an account to continue.  It only takes a minute!"  It then displays a signup/login button.  However, Plaintiff and other blind visitors to the App are not aware of this option since the message and the button are not announced.  Instead, after a blind user attempts

14

to add an item to the cart, focus moves out of the app to the Phone's desktop and begins to announce desktop items. Screen reader users will not know why they cannot add an item to their cart. This is a critical error.

47. By failing to adequately design and program its App to accurately and sufficiently integrate with VoiceOver, Defendant has discriminated against Plaintiff and others with visual impairments on the basis of a disability by denying them the full and equal enjoyment of the App in violation of 42 U.S.C. § 12182(a) and C.F.R. § 36.201.

48. As a result of Defendant's discrimination, Plaintiff was unable to use Defendant's App and suffered an injury in fact including loss of dignity, mental anguish and other tangible injuries.

49. The barriers on the App have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff from attempting to use Defendant's App.

50. If Defendant's App were accessible, Plaintiff could independently navigate, review and purchase products from Defendant's online store as well as utilize the other functions on the App.

51. Plaintiff believes that although Defendant may have centralized policies regarding the maintenance and operation of its App, Defendant has never had a plan or policy that is reasonably calculated to make its App fully accessible to, and independently usable by, people with visual impairments.

52. Defendant's App requires the use of a finger to complete a transaction. Yet, it is a fundamental tenet of web accessibility that for an app to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page using only audio. Indeed, Plaintiff and blind users cannot use their hands because manipulating the hand on the screen is a visual activity of moving the finger from one visual spot on the page to another. Thus, the Apps'

15

inaccessible design, which requires the use of a hand to complete a transaction, denies Plaintiff and blind customers the ability to independently navigate and/or make purchases on the App.

53. Due to the App's inaccessibility, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their purchases or sales at traditional brick-and-mortar retailers.  Some blind customers may require a driver to get to the stores or require assistance in navigating the stores.  By contrast, if the App was accessible, a blind person could independently investigate products and make purchases and sales via the Internet as sighted individuals can and do.  Thus, the App's inaccessible design, which requires the use of a finger to complete a transaction, denies Plaintiff and blind customers the ability to independently make purchases on the App.

54. The App thus contains access barriers which deny the full and equal access to Plaintiff, who would otherwise use the App and who would otherwise be able to fully and equally enjoy the benefits and services of the App in New York State and throughout the United States.

55. Plaintiff, Mary Conner, has made numerous attempts to complete a purchase on the App, most recently on October 12, 2020, but was unable to do so independently because of the many access barriers on Defendant's App.  These access barriers have caused the App to be inaccessible to, and not independently usable by, blind and visually-impaired persons. Amongst other access barriers experienced, Plaintiff was unable to purchase Gap brand clothing and toys for her grandson.

56. As described above, Plaintiff has actual knowledge of the fact that Defendant's App, contains access barriers causing the App to be inaccessible, and not independently usable by, blind and visually-impaired persons.

57. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of the App.

58. Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a) constructed and maintained an app that is inaccessible to blind persons with knowledge of the discrimination; and/or

(b) constructed and maintained an app that is sufficiently intuitive and/or obvious that is inaccessible to blind persons; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind persons.

59. Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

60. Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of the App, Plaintiff has suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of defendant's conduct.  Without injunctive relief, Plaintiff and other visually-impaired individuals will continue to be unable to independently use Defendant's App in violation of their rights under the ADA.

## **FIRST CAUSE OF ACTION**
(Violation of 42 U.S.C. §§ 12181 *et seq*. – Title III of the Americans with Disabilities Act)

61. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 60 of this Complaint as though set forth at length herein.

62. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations

of any place of public accommodation by any person who owns, leases (or leases to), or operates

a place of public accommodation."  Title III also prohibits an entity from "[u]tilizing standards or

criteria or methods of administration that have the effect of discriminating on the basis of

disability."  42 U.S.C. § 12181(b)(2)(D)(I).

63. The App is a sales establishment and public accommodation within the

definition of 42 U.S.C. §§ 12181(7).

64. Defendant is subject to Title III of the ADA because it owns and operates the

App.

65. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful

discrimination to deny individuals with disabilities or a class of individuals with disabilities the

opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages,

or accommodations of an entity.

66. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful

discrimination to deny individuals with disabilities or a class of individuals with disabilities an

opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages,

or accommodation, which is equal to the opportunities afforded to other individuals.

67. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II),

unlawful discrimination includes, among other things, "a failure to make reasonable

modifications in policies, practices, or procedures, when such modifications are necessary to

afford such goods, services, facilities, privileges, advantages, or accommodations to individuals

with disabilities, unless the entity can demonstrate that making such modifications would

fundamentally alter the nature of such goods, services, facilities, privileges, advantages or

accommodations."

68. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

69. There are readily available, well-established guidelines on the Internet for making apps accessible to the blind and visually-impaired.  These guidelines have been followed by other business entities in making their apps accessible, including but not limited to ensuring adequate prompting and accessible alt-text.  Incorporating the basic components to make their app accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

70. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq*., and the regulations promulgated thereunder.  Patrons of Kidizen who are blind have been denied full and equal access to the App, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

71. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

72. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the

19

App in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.*

and/or its implementing regulations.

73. Unless the Court enjoins Defendant from continuing to engage in these

unlawful practices, Plaintiff will continue to suffer irreparable harm.

74. The actions of Defendant were and are in violation of the ADA, and therefore

Plaintiff invokes her statutory right to injunctive relief to remedy the discrimination.

75. Plaintiff is also entitled to reasonable attorneys' fees and costs.

76. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set

forth and incorporated therein, Plaintiff prays for judgment as set forth below.

**SECOND CAUSE OF ACTION**
(Violation of New York State Human Rights Law, N.Y. Exec. Law
Article 15 (Executive Law § 292 *et seq.*))

77. Plaintiff repeats, realleges and incorporates by reference the allegations

contained in paragraphs 1 through 76 of this Complaint as though set forth at length herein.

78. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory

practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or

employee of any place of public accommodation . . . because of the . . . disability of any person,

directly or indirectly, to refuse, withhold from or deny to such person any of the

accommodations, advantages, facilities or privileges thereof.".

79. The App is a sales establishment and public accommodation within the

definition of N.Y. Exec. Law § 292(9).

80. Defendant is subject to the New York Human Rights Law because it owns and

operates the App.  Defendant is a person within the meaning of N.Y. Exec. Law. § 292(1).

81. Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or

remove access barriers to the App, causing the App to be completely inaccessible to the blind.

This inaccessibility denies blind patrons the full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

82. Specifically, under N.Y. Exec. Law § unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

83. In addition, under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

84. There are readily available, well-established guidelines on the Internet for making apps accessible to the blind and visually-impaired.  These guidelines have been followed by other business entities in making their apps accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed by using audio. Incorporating the basic components to make their apps accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

85. Defendant's actions constitute willful intentional discrimination against the Plaintiff on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(2) in that Defendant has:

(a) constructed and maintained a website that is inaccessible to blind persons with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind persons; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind persons.

86. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These violations are ongoing.

87. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the App under N.Y. Exec. Law § 296(2) *et seq*. and/or its implementing regulations.  Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

88. The actions of Defendant were and are in violation of the New York State Human Rights Law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

89. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines pursuant to N.Y. Exec. Law § 297(4)(c) *et seq*. for each and every offense.

90. Plaintiff is also entitled to reasonable attorneys' fees and costs.

91. Pursuant to N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

### THIRD CAUSE OF ACTION
(Violation of New York State Civil Rights Law, NY CLS Civ R,
Article 4 (CLS Civ R § 40 *et seq*.))

22

92. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 91 of this Complaint as though set forth at length herein.

93. Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

94. N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons.  No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . ."

95. N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

96. The App is a sales establishment and public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2).

97. Defendant is subject to New York Civil Rights Law because it owns and operates the App.  Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

98. Defendant is violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to the App causing the App to be completely inaccessible to the blind.

This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

99. There are readily available, well-established guidelines on the Internet for making apps accessible to the blind and visually-impaired.  These guidelines have been followed by other business entities in making their apps accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed by using audio. Incorporating the basic components to make their app accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

100. In addition, N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . ."

101. Specifically, under N.Y. Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside . . ."

102. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These violations are ongoing.

103. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability are being directly indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq*. and/or its implementing regulations.

24

104. Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Rights Law § 40 *et seq*. for each and every offense.

### FOURTH CAUSE OF ACTION
(Violation of New York City Human Rights Law,
N.Y.C. Administrative Code § 8-102, *et seq*.)

105. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 104 of this Complaint as though set forth at length herein.

106. N.Y.C. Administrative Code § 8-107(4)(a) provides that "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

107. The App is a sales establishment and public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9).

108. Defendant is subject to City Law because it owns and operates the App. Defendant is a person within the meaning of N.Y.C. Administrative Code § 8-102(1).

109. Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to the App, causing the App to be completely inaccessible to the blind.  This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.  Specifically, Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq*.] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy

the right or rights in question provided that the disability is known or should have been known by the covered entity."  N.Y.C. Administrative Code § 8-107(15)(a).

110. Defendant's actions constitute willful intentional discrimination against the Plaintiff on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

(a) constructed and maintained a website that is inaccessible to blind persons with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind persons; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind persons.

111. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These violations are ongoing.

112. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the App under N.Y.C. Administrative Code § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

113. The actions of Defendant were and are in violation of City law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

114. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense.

115. Plaintiff is also entitled to reasonable attorneys' fees and costs.

116. Pursuant to N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

### FIFTH CAUSE OF ACTION
(Declaratory Relief)

117. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 116 of this Complaint as though set forth at length herein.

118. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the App contains access barriers denying blind customers the full and equal access to the goods, services and facilities of the App, which Kidizen owns, operates and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Administrative Code § 8-107, *et seq.* prohibiting discrimination against the blind.

119. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and against the Defendants as follows:

a)  A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

b)  A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its App into full compliance with the requirements set forth in the ADA,

and its implementing regulations, so that the App is readily accessible to and usable by blind individuals;

c)   A declaration that Defendant owns, maintains and/or operates its App in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

d)   An order directing Defendants to continually update and maintain its App to ensure that it remains fully accessible to and usable by the visually-impaired;

e)   Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff for violations of their civil rights under New York State Human Rights Law and City Law;

f)   Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

g)   For pre- and post-judgment interest to the extent permitted by law; and

h)   For such other and further relief which this court deems just and proper.

Dated: Scarsdale, New York
        October 14, 2020

SHAKED LAW GROUP, P.C.
Attorneys for Plaintiff

By: */s/Dan Shaked*
    Dan Shaked (DS-3331)
    14 Harwood Court, Suite 415
    Scarsdale, NY 10583
    Tel. (917) 373-9128
    e-mail: ShakedLawGroup@Gmail.com